**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LISA ALBRITTON,

      Petitioner,

v.                           CASE NO:  8:08-CV-363-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

      Respondents.

_____/

# ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, (hereinafter referred to as "Petitioner" or "Albritton"), brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1).  The Court has considered the petition, Respondents' response (Dkt. #11) and Petitioner's reply (Dkt. #14).  Upon review, the Court determines that the petition must be denied because it fails to meet the requirements of 28 U.S.C. §2254(d) and (e).

## BACKGROUND

On June 28, 2001, Petitioner was charged by information with:

Count One:   Aggravated battery on a law enforcement officer;

Count Two:   Depriving an officer of means of protection or communication;

Count Three: Carjacking;

Count Four:   Attempted second degree murder of a law enforcement officer;

Count Five:   Felony fleeing or attempting to elude; and

Count Six:    Driving while license suspended or revoked.

Petitioner was tried by a jury on July 10, 2002. The state presented evidence showing that on July 9, 2001, Deputy Angulo saw Petitioner in a church parking lot at about 11:00 p.m. walking away from a car that had its hood raised. The officer approached Petitioner and asked her if she was having car trouble. She acted very nervous and said that she was. She then gave the officer conflicting stories about why she was there and where she was headed. The officer asked the Petitioner for consent to search her purse and the Petitioner placed her purse on the hood of the officer's patrol car. He began looking in the purse and saw a latex glove but then Petitioner told the officer to stop, she did not want him to look in her purse any further.

The officer then asked the Petitioner to accompany him back to the car that had its hood raised and she agreed. When the officer looked into the car, he saw that the steering column was broken and wires were hanging out from underneath. When the officer began questioning Petitioner further about the car, she became nervous and agitated and asked why she was being arrested. She said she was on probation in Hillsborough County, Florida, and could not afford to get into trouble. The officer asked if her probation allowed her to be in Polk County, Florida, and she said no. At that point, the officer decided to detain her.

Petitioner began walking away from the car and the officer asked her to stop. When she did not stop, the officer grabbed her and brought her back to his patrol car. She began

to flail her arms while the officer was attempting to put handcuffs on her. She got her hands free and began hitting the officer. The officer was holding a flashlight. Petitioner grabbed the flashlight and began striking the officer in the head. She then bit his finger and refused to release it. The officer sprayed her in the face with pepper spray, but it had no apparent effect on her. When the spray began to come back into his face, he stood the two of them up, grabbed his baton, and began hitting her. Being hit with the baton also seemed to have no effect on Petitioner. She still refused to open her mouth to release his finger.

The officer, becoming desperate to save his finger, pleaded with her to release it. She did, but then broke free and jumped into his patrol car which was still running. The officer put his foot into the car, trying to reach the brake, while at the same time trying to turn the car off to keep Petitioner from stealing the car. Petitioner won that struggle, drove off, circled around in the parking lot and drove directly at the officer. The officer fired several shots at the patrol car as he tried to run out of the way. Deputy Angulo then retrieved his radio and reported that his patrol car had been stolen. Deputy Harper, who heard the report, saw the patrol car approaching him. He gave chase when Petitioner refused to stop. Finally, Petitioner ran the patrol car into a culvert and got stuck. Officer Harper pulled her out of the car by her hair and she began to fight with him. Deputy Harper eventually succeeded in getting Petitioner in handcuffs and under control.

The state called Robert Fisher as a witness who testified that: he owned the car in the church parking lot, had left the car while he went out of town, did not leave the hood up, did not know the Petitioner, did not give her permission to use his car, and the steering column

was not broken when he left.

Petitioner testified in her own defense and gave a different version of the facts. She testified that she had had an argument with her boyfriend, got out of the car, and began to walk. As she walked through the church parking lot, Deputy Angulo approached her and asked for identification. He told her he was detaining her for loitering and prowling. She accompanied the officer to the car parked in the church lot. She stood at the front while the officer inspected the car. He then questioned her and began to press his body against her. She tripped over her purse and they both fell on the ground where a struggle ensued. The officer covered her mouth with his hand so she bit his finger.

Petitioner stated that she grabbed the officer's flashlight and began to swing it over her head. She was afraid the officer would hurt her so she jumped into his patrol car and drove off. She did not drive the patrol car at the officer, but the officer shot at her anyway. She drove the patrol car until she eventually wrecked when another patrol car hit her. The second deputy pulled her out and punched her in the face.

Petitioner was found guilty as charged and, on October 10, 2002, was sentenced to 280.2 months in prison. She appealed her conviction raising one issue:

> Whether the trial court abused its discretion in sustaining the State's objection to defense counsel's characterization of the deputy as a liar in closing argument?

The appellate court *per curiam* affirmed the Petitioner's conviction on August 22, 2003.

Albritton v. State, 856 So.2d 986 (Fla. 2d DCA 2003) (table opinion).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 on July 1, 2004, raising six grounds:

**Ground One:**     The Petitioner was deprived of her right to effective assistance of trial counsel when her trial counsel failed to object to testimony by Deputy Angulo that he believed the Petitioner was on drugs at the time of the offense.

**Ground Two:**     The Petitioner was deprived of her right to effective assistance of trial counsel when her trial counsel failed to present relevant mitigating evidence at sentencing.

**Ground Three:**     Defense counsel was ineffective for telling the Petitioner that she could beat the charges and advising her to reject a plea offer without a realistic discussion of what the chances were of a conviction.

**Ground Four:**     Defense counsel was ineffective for advising the Petitioner she could receive no more than 15 years if found guilty, when she would have accepted a plea offer had she known she could receive more than 15 years.

**Ground Five:**     Defense counsel was ineffective for not advising the Petitioner that she could pursue an insanity defense at trial.

**Ground Six:**     The numerous deficiencies by Petitioner's trial counsel had the cumulative effect of depriving the Petitioner of her right to effective assistance of trial counsel.

The post-conviction court held a hearing on February 20, 2006, on all six issues. The state called Petitioner's trial counsel as a witness and the Petitioner called Dr. Henry Dee, a psychologist. The post-conviction court, after questioning Petitioner, found that issues three, four, five and six were voluntarily dismissed by her. On May 18, 2006, the court then denied claims one and two finding:

(1)     there was no reasonable probability that Deputy Angulo's belief that Petitioner was on drugs at the time of the incident affected the

proceedings and that therefore trial counsel could not be deemed ineffective for failing to raise a meritless objection, and

(2)     that trial counsel was not ineffective for not presenting the mitigation evidence of Dr. Dee because Dr. Dee's opinion was based on his conclusion that Petitioner was under the influence of drugs at the time of the incident.  Voluntary intoxication is not a basis for mitigation.

Petitioner appealed the denial of her 3.850 motion and raised three issues:

I.      Whether the trial court erred in denying the Petitioner's motion for post-conviction relief alleging trial counsel was ineffective for failing to object to testimony from the police officer indicating he believed the Petitioner was on drugs at the time of the offense;

II.     Whether the trial court erred in denying Petitioner's motion for post-conviction relief alleging trial counsel was ineffective for failing to present mitigation evidence on her behalf at sentencing; and

III.    Whether the court erred in finding Petitioner voluntarily dismissed four claims of ineffective assistance of trial counsel after the Petitioner informed the trial court of her intention to dismiss the claims during the evidentiary hearing?

The post-conviction court's order was affirmed *per curiam* on October 17, 2007.  Albritton v. State, 976 So.2d 1100 (Fla. 2d DCA 2007) (table opinion).  Petitioner filed a motion for rehearing on October 26, 2007, and it was denied on January 6, 2008.

Petitioner timely filed her petition for writ of habeas corpus with this Court on February 14, 2008, raising the following six grounds for relief:

**Ground One:**     The Petitioner was denied her U. S. Constitutional right to a fair trial when the trial court improperly infringed on her right to closing argument when it prevented her from arguing the State's witness was untruthful.

**Ground Two:**     The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel failed to object to the

deputy's testimony that he believed the Petitioner was on drugs at the time of the offense.

**Ground Three:** The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel failed to present mitigation evidence during her sentencing hearing.

**Ground Four:** The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel advised the Petitioner to reject a plea offer and proceed to trial.

**Ground Five:** The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel failed to advise the Petitioner to pursue an insanity defense.

**Ground Six:** The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel because the cumulative errors of her trial counsel deprived the Petitioner of a fair trial.

## STANDARD OF REVIEW

### A. AEDPA

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions thereof. When a federal court is asked to review a criminal conviction from state court, 28 U.S.C. § 2254 places a heavy burden upon the petitioner. Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that:

(1)     was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

(2)     was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Mitchell v. Esparza</u>, 540 U.S. 12 (2003).

In <u>Mitchell v. Esparza</u>, the Supreme Court explained that a state court's decision is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from our precedent." <u>Mitchell</u>, citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000).

As to the issue of whether a state court has made "an unreasonable determination of the facts in light of the evidence," the state court's determinations of fact are presumed to be correct and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.      Ineffective Assistance of Counsel

Where a claim of ineffective assistance of counsel is made, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under the prevailing professional forms. <u>Id.</u> at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. The Eleventh Circuit has held that "[w]hen applying <u>Strickland</u>, we are free to dispose of ineffectiveness claims on either of its two grounds." <u>Oats v. Singletary</u>, 141 F.3d 1018, 1023 (11th Cir. 1998). "To state the obvious: trial lawyers, in every case, could have done

something more or something different.  So, omissions are inevitable.  But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)).

Under Strickland, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

## DISCUSSION

At the outset, the court notes that the state court, in Petitioner's 3.850 motion, properly applied the Strickland standard and determined that Petitioner failed to meet the prejudice prong.  That decision was affirmed by the state appellate court without written opinion.  The Eleventh Circuit has held that even decisions without written opinion are entitled to the same deference as if the appellate court had entered written findings to support its decision.  Wright v. Sec. of Dept. of Corr., 278 F.3d 1245 (11th Cir. 2002).  This Court has reviewed the state courts' decisions and determines that they are not contrary to established federal law.

Turning to the individual claims, the Court will now briefly address each of Petitioner's claims that are not procedurally barred.

**<u>Ground One:</u>**    The Petitioner was denied her U. S. Constitutional right to a fair trial when the trial court improperly infringed on her right to closing argument when it prevented her from arguing the State's witness was untruthful.

In support of ground one, Petitioner argues that "during closing argument, counsel focused on demonstrating how the state's witness/victim's testimony conflicted with other evidence introduced at trial. The state objected and the trial court prohibited counsel from arguing Deputy Angulo's truthfulness. Where there was a basis for doing so, the Petitioner was allowed (sic?) to argue that the witness' testimony was untruthful, based solely on the evidence."

Contrary to Petitioner's assertion, the trial court did not prohibit counsel from arguing Deputy Angulo's truthfulness. The trial court limited the manner in which defense counsel was allowed to argue the issue of truthfulness - defense counsel was not allowed to give what the trial court thought was counsel's personal opinion by calling the deputy a liar or saying he was not telling the truth. Each time the trial court sustained an objection to the manner in which defense counsel presented his argument, counsel was allowed to rephrase and present his version of truthfulness to the jury. The argument in question begins at page 359 of the trial transcript (Exhibit 1):

MR. AKES:    How are we going to explain this? This is the hole. Now, how does he fire that bullet running away like this? I mean, how does he even fire it running away backwards so that it goes like this? I mean, that's the way it had to

have gone.  He can't explain that at all.  Deputy Angulo is not telling the truth about the shots.  That's clear.  There's no question about it.

MR. SPICKERMAN:        Objection, Your Honor.

THE COURT:        Sustained.  You want to come to a side bar?

(The following Bench Conference took place outside the hearing of the Jury.)

THE COURT:        You can make a lot of comments about what witnesses are doing, but that's an improper one.  Okay?

MR. AKES:        Saying he's not telling the truth?

THE COURT:        Yeah.  On final argument, that's right.

MR. AKES:        Okay.

THE COURT:        Okay?  I mean you can say it a lot of different ways, but saying he's a liar or saying he's not telling the truth is improper.

MR. AKES:        I'm sorry?

THE COURT:        Saying he's not telling the truth is an improper way to go about it.  Okay?

MR. AKES:        Okay.

THE COURT:        Just modify the way you're saying it.

MR. AKES:        Can I say he's not telling it the way it happened?

THE COURT:        Yeah.

MR. SPICKERMAN:        Well, if he comments, wouldn't it be up to the jury to decide?

THE COURT:        It's up to the jury to determine whether he's being truthful or not, not up to you.  Okay?

MR. SPICKERMAN:     Your Honor, could we have an instruction to strike that?

THE COURT:          Yeah.

MR. SPICKERMAN:     Thank you.

THE COURT:          You can say what – what (sic) his testimony is not consistent with the facts, you can say any number of things, but you can't – that's your personal opinion that he's not telling the truth, and that's – you're not allowed to inject your personal opinion into this – into the case. All right?

MR. AKES:           I understand that I'm not allowed to give my personal opinion. I don't think I was giving my personal opinion. I think I was saying the facts show that he's not telling the truth. Can I say the facts show that he's not telling truth?

THE COURT:          No.

MR. AKES:           Okay.

THE COURT:          Okay.

                    (End of Bench Conference.)

THE COURT:          Ladies, you're to disregard the characterization of the truthfulness of a witness's testimony.

                    You may proceed.

MR. AKES:           Thank you, Your Honor.

                    Deputy Angulo's testimony is entirely inconsistent with the physical evidence. Now, I told you at the start of the trial, there were going to be two people that were going to testify as to what the events were that produced this situation that resulted in all of these charges. Those two

people are Deputy Angulo and Lisa Albritton. I told you that one of them's testimony would be consistent with the physical evidence and I told you one of them wouldn't, and that's what happened. Deputy Angulo's testimony is inconsistent with the physical evidence there. Lisa Albritton's testimony is consistent with the physical evidence there.

Now, the State called a lot of witnesses in this case, although most of 'em didn't take very long. It's – it was really an awfully quick trial for that many witnesses, and we only called a few witnesses. And, of course, there's a reason for that. It's because Lisa Albritton doesn't have anything to prove. The State's burden is to prove. And the State's burden is to prove each and every element of each and every crime to the exclusion of every reasonable doubt, and I don't have to prove anything. Now, they're required to come through with credible evidence that tells you how this happened. And we cannot rely on the testimony of Deputy Angulo because we know that the evidence about the gunshots show that it couldn't have happened that way.

And it's really the height of arrogance for Deputy Angulo to come in here and sit up there on the witness stand and to say I fired those things – those shots at the windshield when one of them entered the rear of the car going at a sharp angle. I mean, you got to really be relying on your position in life to say stuff like that, to say stuff like that and ask people to believe it.

(Exhibit 1, p. 359, line 22, through p. 363, line 25).

\* \* \*

MR. AKES:    And he insists that he was only firing at her because she was coming at him. He insists that she was coming at him every time he fired the weapon. And she wasn't. There's no way she was. It doesn't match with the evidence at all. So he made that up. He made that up. He made up a story.

MR. SPICKERMAN:    Objection, Your Honor.  May we approach?

THE COURT:    Yes, you can.

MR. AKES:    If that's the same objection, Your Honor, I'd --

THE COURT:    It's the same objection, and it's sustained.   And I'm going to instruct you not to do that.

MR. AKES:    Okay.  Well, I didn't think that fell within the area, but I will refrain from it.

THE COURT:    Ladies and gentlemen – or ladies of the jury, I'm sorry, the jury determines who's truthful and who's not truthful in the case, not the attorneys, so you're to disregard any characterization that someone is not telling the truth.  It's up to you to determine who's told the truth.

You may proceed, Mr. Akes.

MR. AKES:    Thank you, Your Honor.

So we know that the shooting didn't happen that way.  Now, did he take the rubber glove that had fallen out of her backpack at that point in the scuffle, did he take that and put it in the car?  I don't know.  But he certainly would have.  He certainly could have.  It certainly helps his story because there isn't any other evidence to connect her to that vehicle except what he says.  He says she was walking away from it.  But she couldn't have been.  Did he do that?  I don't know if he did that.  I don't know any other way that would have gotten in there.  Lisa Albritton has told you she was never near that vehicle, and her testimony rings true.  Her testimony is consistent.

MR. SPICKERMAN:    Objection, Your Honor.

MR. AKES:    Her test – may I rephrase that, Your Honor?

| | |
|---|---|
| THE COURT: | Objection is sustained. |
| | Again, the attorney does not determine who's truthful or not.  You determine who's truthful.  Your may rephrase your question – I'm sorry – your -- |
| MR. AKES: | Yes, sir. |
| THE COURT: | – statement. |
| MR. AKES: | Her testimony is consistent with the physical evidence. Her testimony is consistent with the physical evidence at every place you can tell.  Her testimony is consistent with the physical evidence of every picture there. |

(Exhibit 1, p. 373, line 20 - p. 376, line 3).

This is not an issue of whether the trial court was right or wrong in its rulings on the objections.  Evidentiary rulings in state court are not reviewable in this Court.  Estelle v. McGuire, 502 U.S. 62 (1991).  The only issue before this Court on habeas review is whether an asserted error (and this Court is not determining that the trial court made an error in its rulings) constituted a denial of some constitutional right.  To be entitled to relief, a petitioner must show that the asserted error so infected the trial with unfairness that it made the resulting conviction a denial of due process.  Williams v. Henderson, 451 F.Supp. 328 (EDNY 1978), affirmed, 584 F.2d 974, *cert. denied*, 441 U.S. 911 (2007).

Here, defense counsel was allowed to point out all portions of Deputy Angulo's testimony that defense counsel claimed were inconsistent.  He was not prohibited from arguing his version of Deputy Angulo's "truthfulness."  Since defense counsel was allowed to make all of his arguments concerning Deputy Angulo's "truthfulness," the trial court's

limitation of the manner in which the arguments were made did not render the resulting conviction unfair. This argument lacks merit and will be denied.

**Ground Two:** The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel failed to object to the deputy's testimony that he believed the Petitioner was on drugs at the time of the offense.

In support of ground two, Petitioner contends that "Deputy Angulo, the victim, testified that he believed at the time of the offense that Petitioner was on drugs. This testimony was irrelevant to the charges and evidence of other crimes. This testimony was prejudicial and given to prove propensity towards criminal behavior. The state did not give notice to present such evidence. Counsel had a duty to object to these statements and request a mistrial or curative instruction; his failure to do so deems him ineffective."

First, Petitioner's complaint that the State did not give notice to present such evidence is misplaced -- the State did not present this evidence. Rather, the testimony in question was elicited by defense counsel on cross-examination when he was attempting to discredit the officer's testimony concerning whether he fired at the car to stop her or in anger:

> MR. AKES: Deputy, isn't true that you fired at my client not to stop her, but in anger?
>
> DEPUTY ANGULO: No, Sir. I was stopping her - I was shooting to prohibit her from running me over and killing me.
>
> MR. AKES: And isn't it true that after you fired three rounds into that vehicle, including the one that hit my client's finger, and after the vehicle was gone, you said, whoops, I'm in trouble because I have fired my vehicle (sic) and it wasn't in self-defense.
>
> DEPUTY ANGULO: I never said that.

MR. AKES:  You didn't say that to yourself?

DEPUTY ANGULO:  No, I did not. I said to myself, from what I recall, I'm look, (sic) ooh, I'm probably going to get in trouble for my vehicle being stolen. But I knew that wasn't going to happen.

MR. AKES:  Knew what wasn't going to happen?

DEPUTY ANGULO:  That I was going to get in trouble. I just knew pretty much that I was going to be made fun of, which happened.

MR. AKES:  You were embarrassed by the whole thing, wasn't (sic) you?

DEPUTY ANGULO:  No. I know stuff like this happens every day. Pretty much a lot of people, you know, say how could a young, small female do something to me, a guy.  And what people don't realize is that I believed that she may have been under the influence of a narcotic, and usually that narcotic gives people certain power where they don't feel pain or they're a little stronger than others.

A lot of people don't experience what I've done, so they could do a lot of Monday morning quarterbacking, Monday night quarterbacking. What happened and what I did that day, I don't take anything back, and I would have been the same way. I'm not going to judge myself for what I did. I think what I did was right.

MR. AKES:  So you think she's - - she was on drugs of some sort?

DEPUTY ANGULO:  I believe she may have been under the influence of a narcotic.

MR. AKES:  And that's because she was stronger than you thought she was going to be?

DEPUTY ANGULO:  No. It all started beforehand, the way she was acting, the way she was fidgeting and walking around all over the place. I've made numerous, numerous arrests on people who've been on what I - - - methamphetamines, and that's the way they acted towards me.

(Exhibit 1, trial transcript, 145-146).

Second, the explanation by the officer was not given to show propensity on the part of Petitioner, but to explain her strength, lack of reaction to pain, and her actions in general. Defense counsel's questioning of the officer in this regard was a matter of trial strategy in an attempt to discredit the officer. Many other lawyers would have chosen to handle the unexpected statements by the officer in the same fashion rather than appearing to want to hide it from the jury by objecting.

This ground fails both prongs of Strickland.[1] Counsel's performance was neither deficient nor was Petitioner prejudiced.

**Ground Three:** Counsel was ineffective for failing to present mitigating evidence at sentencing denying Petitioner her U. S. Sixth Amendment Constitutional right.

In support of ground three, Petitioner argues that she "was sentenced at the bottom of the guidelines. Counsel failed to properly argue for a downward departure, preventing the trial court from considering such departure. The mitigating evidence that counsel should have presented was the testimony of Dr. Henry Dee whom (sic) conducted an in depth evaluation on the Petitioner and found that the Petitioner suffered from a psychiatric disturbance at the time of the crime."

The state post-conviction court held a hearing on this ground and took testimony from defense counsel. Defense counsel explained that he did not raise Dr. Dee's opinion in arguing for mitigation at sentencing for two reasons: (1) while Dr. Dee had an opinion of

---

[1] Strickland v. Washington, 466 U.S. 668, 687 (1984).

insanity at the time of the offense, such opinion was based on Petitioner's voluntary intoxication by having ingested methamphetamine within two hours prior to the incident, and (2) three other experts had examined Petitioner and concluded that she was sane at the time of the incident.

Counsel did not offer this testimony because voluntary intoxication would not have been a mitigating factor. Defense counsel did not know if presenting all of the mental health evaluations would have helped or hurt the Petitioner at sentencing, but there was nothing in the evaluations that could have been used by the sentencing court for mitigation.

Dr. Dee's testimony could have been more harmful than beneficial to Petitioner's case. Had he testified, he would have acknowledged that she told him that not only had she ingested methamphetamine two hours before the offense occurred, but that she had told him she knew the deputy was detaining her and she intentionally lied to the deputy. He would have testified further that there was no indication that Petitioner did not know right from wrong, she knew she was in violation of her probation when the deputy stopped her that night, and she knew what she was doing when she was trying to get away in the deputy's patrol car.

All of the foregoing supports the post-conviction court's finding that trial counsel was not ineffective for not presenting Dr. Dee's testimony as mitigation evidence because there was no reasonable probability that it would have affected the outcome of the proceeding. The post-conviction court, in so finding, appropriately applied the Strickland standard. Therefore, this ground will be denied.

**Ground Four:**      The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel advised the Petitioner to reject a plea offer and proceed to trial.

**Ground Five:**      The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel when trial counsel failed to advise the Petitioner to pursue an insanity defense.

**Ground Six:**      The Petitioner was denied her Sixth Amendment right to effective assistance of trial counsel because the cumulative errors of her trial counsel deprived the Petitioner of a fair trial.

These claims of ineffective assistance of counsel were raised by Petitioner in her 3.850 motion for post-conviction relief. At the evidentiary hearing, her post-conviction counsel advised the court that she wished to voluntarily dismiss four claims, including these three. In an abundance of caution, the post-conviction court questioned Petitioner to be sure that she intended to dismiss the claims:

> THE COURT:      Ms. Albritton?
>
> MS. ALBRITTON:  Yes, Sir. I am aware of that.
>
> THE COURT:      You just heard your attorney announce that you are dismissing your allegations concerning issues three, four, five and six and only proceeding on issues number one and two that is (sic) outlined in your motion. Do you agree - -
>
> MS. ALBRITTON:  Yes, Sir. I am aware of that.
>
> THE COURT:      Do you agree with it?
>
> MS. ALBRITTON:  Yes, Sir.
>
> THE COURT:      Okay. I just wanted to get you on the record for purposes of having acknowledged that you're in agreement with that – dismissing those and proceeding only on issue one

and two.

MS. ALBRITTON: I understand, that would be my word against (indiscernible) word. I understand. And Mr. Rhoton informed me that we are going to proceed on one and two.

THE COURT: Correct.

MS. ALBRITTON: Right.

(Transcript, exhibit 6, pp. 171-72).

Further, these claims were not raised on direct appeal from the denial of Petitioner's post-conviction motion. The only issue raised in that appeal was whether the trial court properly determined that Petitioner voluntarily dismissed these claims. The state appellate court affirmed, putting to rest the issue of whether or not Petitioner's statements and actions were considered a dismissal of the claims under state law.

By not fairly presenting these claims to the state court, Petitioner is now procedurally barred from raising them here. Harmon v. Barton, 894 F.2d 1268 (11th Cir. 1990), *cert. denied*, 498 U.S. 832 (1990). Petitioner can avoid this procedural bar by showing either cause and prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by constitutional violation that resulted in the conviction of a defendant who was "actually innocent" as contemplated in Murray v. Carrier, 477 U.S. 478 (1986). Here, Petitioner has not attempted to show either.

Voluntarily dismissing one's claims does not support "cause." Cause is ordinarily something external to the defense. Marek v. Singletary, 62 F.3d 1295 (11th Cir. 1995). To

establish the fundamental miscarriage of justice exception, an "extremely rare circumstance," the petitioner must show constitutional error coupled with "<u>new</u> reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).

Petitioner has proffered no specific facts to show either cause or a fundamental miscarriage of justice. In the absence of such a showing, claims that have been procedurally defaulted in state court are not to be considered on the merits by a federal habeas court. <u>Kight v. Dugger</u>, 50 F.3d 1539, 1543 (11th Cir. 1995). Therefore, these claims are procedurally barred and are dismissed.

<u>CONCLUSION</u>

Having determined that all claims lack merit or are procedurally barred, this Court will deny the petition.

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on May 28, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies Furnished To**</u>:
Counsel/Parties of Record

*F:\Docs\2008\08-cv-363.deny 2254.wpd*